# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRANDON CHRISHON POLK,     )
                                   )
               Plaintiff,     )
                                   )
           v.              )        1:22CV613
                                   )
STANLY COUNTY, et al.,      )
                                   )
            Defendants.    )

## ORDER, MEMORANDUM OPINION AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on a motion for summary judgment by Defendants Stanly County, Stanly County Sheriff's Office, Stanly County Sheriff Jeff Crisco, and Sheriff's Office employees Jarett Efird, Daniel Huneycutt, Tom Morgan, Dalton Sells, Joseph Callicutt, and Francisco Porras. (Docket Entry 37.) Plaintiff Brandon Chrishon Polk has filed a cross motion for summary judgment or partial judgment. (Docket Entry 40.) Also before the Court is Plaintiff's letter motion for an extension of time to submit evidence in connection with his response to Defendants' summary judgment motion (Docket Entry 43), and Plaintiff's letter motion for an extension of time to submit evidence in connection with his purported sur-reply to Defendants' motion for summary judgment (Docket Entry 48.) For the reasons stated herein, the undersigned will grant Plaintiff's letter motion for an extension of time to submit evidence in connection with his response to Defendants' summary judgment motion and deny Plaintiff's motion for an extension of time to file a sur-reply, including any related evidence. Furthermore, the undersigned will recommend that Defendants' motion for summary

judgment be granted, and Plaintiff's motion for summary judgment or partial judgment be denied.

## I.     BACKGROUND

Plaintiff, a *pro se* prisoner, filed the instant Complaint pursuant to 42 U.S.C. § 1983 against Defendants alleging several claims arising from two separate incidents on November 1, 2019.  (*See generally* Compl., Docket Entry 2.)[1]  More specifically, Plaintiff asserts that on the morning of November 1, 2019, he received numerous phone calls from an unknown individual "who was trying to buy drugs." (*Id.* at 13.)[2]  Plaintiff eventually agreed to drive from Charlotte, North Carolina, to Albemarle, North Carolina, to "see who [the caller] was," but with no intention of selling the individual drugs.  (*Id.* at 14.)  When Plaintiff arrived at the meeting place in his vehicle, he noticed the store appeared closed, and observed a "gray unmarked vehicle" attempting to block off him while exiting.  (*Id.*)  Plaintiff then observed a man (later identified as Defendant Huneycutt) jump out of the passenger side of that vehicle and advance towards him with his gun drawn.  (*Id.*)  Plaintiff did not notice any markings on Defendant Huneycutt's shirt identifying him as a law enforcement officer.  (*Id.*)  Plaintiff proceeded to flee from the scene with the gray vehicle in pursuit with Defendant Morgan driving and Defendant Huneycutt on the passenger side.  (*Id.*)  A white sheriff's jeep driven by Defendant

---

[1] When originally docketed on CM/ECF, the Complaint was missing a page. CM/ECF now reflects the complete document.  Also, Defendants' amended answer notes the spelling corrections to the names of several defendants.  (*See* Docket Entry 17.)

[2] Unless otherwise noted, all citations herein as to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Efird (a K-9 officer), along with his dog Bodi and Defendant Sells, was also in pursuit of Plaintiff's fleeing vehicle. (*Id.*)

Plaintiff alleges that a chase lasted "a few minutes[,]" including Plaintiff veering off the road, nearly hitting a mailbox, before returning to the road and observing the white jeep behind him with sirens on. (*Id.* at 14-15.) Plaintiff began to pump his brakes signaling his intent to slow down and subsequently started looking for a safe place to stop. (*Id.* at 15.) He came to a stop in the driveway of a nearby residence and "sat with both of [his] hands up to be clearly seen." (*Id.* at 15.) The officers then pulled up, and Defendant Sells jumped out of the car with his weapon drawn and removed Plaintiff from the vehicle and threw Plaintiff on the ground in the driveway. (*Id.* at 15-16.) Plaintiff alleges that while he was on the ground, K-9 Bodi proceeded to bite Plaintiff repeatedly. (*Id.* at 16.) Plaintiff asserts that he was handcuffed by Defendant Efird while K-9 Bodi was still attacking him, and that after he was handcuffed Defendant Huneycutt, Defendant Morgan, Defendant Sells, and Defendant Efird stood in front of him "convers[ing] and watching the dog attack [him] without trying to remove the dog." (*Id.* at 16-17.) Another officer, Defendant Callicutt, also approached while K-9 Bodi was attacking Plaintiff and did nothing. (*Id.* at 17.) At some point during the attack, Plaintiff heard Defendant Efird tell the other officers that K-9 Bodi's teeth were stuck in Plaintiff's jacket, but Defendant Efird allowed the dog to continue to pull on Plaintiff. (*Id.*) Plaintiff alleges that Defendant Efird finally called off K-9 Bodi when someone came out of the residence of the home. (*Id.*) Plaintiff estimates that the attack lasted "between 2 and 3 minutes[.]" (*Id.*)

Shortly after K-9 Bodi was pulled off Plaintiff, Defendant Huneycutt verbally attacked Plaintiff and Plaintiff was searched by Defendant Sells. (*Id.* at 18.) Plaintiff admits that his items seized were not returned because officers found a small bag of methamphetamine in his vehicle. (*Id.*) Plaintiff alleges that a detective with the Albemarle Police Department approached Plaintiff to say that he was the caller from earlier and that the calls were recorded. (*Id.*) The detective and Defendant Morgan also found approximately two ounces of methamphetamine on the side of the road where Plaintiff nearly wrecked. (*Id.*)

Plaintiff also alleges that Defendant Crisco arrived on the scene along with ambulance services. (*Id.* at 19.) Plaintiff claims that Defendant Crisco "drove off" after he was assured that the situation was under control "without getting out [of his vehicle] or showing any concerns about why [Plaintiff] was bleeding and how [his] clothes got ripped up." (*Id.*) The paramedics checked Plaintiff's wounds and asked if he wanted to ride with them to Stanly Regional Hospital. (*Id.*) Plaintiff claims that Defendants Efird and Sells prevented the paramedics from taking Plaintiff, resulting in an "argument that [led] to the paramedics walking off angry." (*Id.*)

After the paramedics left, Plaintiff asserts that he was placed in the back seat of the white jeep, right next to a steel cage holding K-9 Bodi. (*Id.*) Defendant Efird and an unknown officer proceeded to transport Plaintiff to the hospital. (*Id.*) Plaintiff alleges that on the way to the hospital, Defendant Efird pulled over and got out of the vehicle with the other officer to take a phone call, leaving Plaintiff alone in the back seat bleeding badly and with K-9 Bodi. (*Id.* at 19-20.) Plaintiff estimates that the vehicle was pulled over for about fifteen minutes before the officers re-entered and drove Plaintiff to Stanly Regional Hospital. (*Id.* at 20.) At

the hospital, Plaintiff asserts that a nurse recommended he receive stitches for a wound under his arm, but that Defendants Efird, Sells and the unknown officer "talked the nurse into not giving [him] stitches" because they were "running short on time and had to get [him] to the [magistrate's] office." (*Id.*) Plaintiff claims that Defendants ultimately convinced the nurse to treat the wound with a gel substitute for stitches against Plaintiff's wishes. (*Id.* at 20-21.)[3]

Plaintiff was transported from the hospital to Stanly County Jail where he was charged with several offenses and given a $700,000 bond. (*Id.* at 21.) At some point during his time at the jail, Plaintiff was allowed to use the phone. (*Id.*) During that time, Defendant Porras served Plaintiff with legal paperwork from an August 2019 incident, and Plaintiff and Defendant Porras thereafter engaged in a "verbal altercation" that resulted in Plaintiff spitting in Defendant Porras's face. (*Id.* at 21-22.) Plaintiff alleges that Defendant Porras responded by punching Plaintiff in the face and Plaintiff attempted to lay on the ground with one hand behind his back. (*Id.* at 22-23.) As Plaintiff attempted to place his other hand behind his back, Defendant Porras put Plaintiff in a choke hold position "until [he] lost consciousness and went to sleep." (*Id.* at 23.) When Plaintiff regained consciousness "a few seconds later[,]" he was laying on the ground with another officer holding his outstretched right arm and bending his fingers backward. (*Id.*) Plaintiff eventually freed his right arm, was released from the choke hold, and was ultimately charged with assault on a government official. (*Id.*)

As a result of the two incidents on November 1, 2019, Plaintiff asserts that he was treated with a rabies shot, and given ibuprofen and antibiotics for approximately 20 days for

---

[3] Plaintiff subsequently filed hospital records from his emergency room visit, and a profile picture taken at the Stanly County Jail. (*See* Docket Entry 21.) In addition, he filed additional medical information. (*See* Docket Entries 28, 31.)

the pain of the dog attack and choke hold. (*Id.* at 24.) Plaintiff asserts that his right hand was sore for a "few weeks" and that he had "red marks in [his] eyes" for "a couple months" from being choked by Defendant Porras. (*Id.*) Plaintiff also alleges significant emotional trauma as a result of the K-9 attack. (*Id.*) Plaintiff describes experiencing flashbacks and nightmares related to the incident and claims that he has "developed anxiety issues, fear of dogs, PTSD, phobia, and a lack of trust for K-9 holders and other govt. officials." (*Id.* at 24-25.) Plaintiff admits that this is the second time he has been bit by K-9 Bodi; he first encountered the dog after fleeing on foot around March 2019. (*Id.* at 25.)

As a result of the alleged conduct, Plaintiff asserts the following claims: (1) Fourth Amendment excessive force against Defendants Efird, Sells, Huneycutt, and Morgan; (2) bystander liability against Defendants Huneycutt, Morgan and Callicutt; (3) malicious prosecution against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (4) negligence against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (5) gross negligence against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (6) Fourteenth Amendment "pain and suffering" against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (7) negligent infliction of emotional distress against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (8) intentional infliction of emotional distress against Defendants Efird, Sells, Huneycutt, Morgan, and Callicutt; (9) Eighth Amendment deliberate indifference against Defendant Efird; (10) Fourteenth Amendment excessive force against Defendants Porras and John Doe; (11) negligence against Defendants Porras and John Doe; and (12) failure to investigate, supervise, and discipline staff against Defendant Crisco. (*See id.* at 30-41.) Plaintiff sues all Defendants in both their official and individual capacities. (*See id.* at 12, 28-29.)

After discovery, Defendants moved for summary judgment, arguing *inter alia* that their uses of force was reasonable, they are entitled to qualified immunity on the federal claims, and they are entitled to governmental immunity and public official immunity on the state law claims. (*See* Docket Entries 37, 38.) Along with a brief in support of their motion, Defendants filed declarations of Defendants Jarett Efird (*see* Declaration of Jarett Efird, Docket Entry 38-2) and Francisco Porras (*see* Declaration of Francisco Porras, Docket Entry 38-8). In addition, counsel for Defendant filed a declaration and attached excerpts from Plaintiff's deposition (*see* Excerpts from Plaintiff's Deposition, Docket Entry 38-4) along with information regarding Plaintiff's federal indictment (*see* Indictment in 20 CR 219, *U.S. v. Polk*, Docket Entry 38-5), charge (*see* Charge in 1:21CR157-1, *U.S. v. Polk*, Docket Entry 38-6), and judgment (*see* Judgment in 1:21CR157-1, *U.S. v. Polk*, Docket Entry 38-7) relating to the events at issue.

In pertinent part, Defendant Efird is a deputy sheriff, trained K-9 handler and has been partnered with K-9 Bodi since 2017. (Efird Decl. ¶¶ 2-3.) Defendant Efird confirms that he became familiar with Plaintiff during a chase in February 2019 whereby Plaintiff attempted to flee, and Defendant Efird deployed K-9 Bodi to apprehend Plaintiff. (*Id.* ¶ 5.) As to the November 1, 2019 incident, Defendant Efird recounts working with undercover detectives with the Stanly County Sheriff's office narcotics division to intercept Plaintiff at a gas station located at 24250 North Carolina Highway 138 in Albemarle, North Carolina. (*Id.* ¶¶ 6-7.) Plaintiff was being investigated for drug trafficking. (*Id.* ¶ 6.) Undercover detectives contacted Plaintiff to set up a time to meet at the gas station to deliver drugs; Defendant Efird rode in a marked patrol car with Defendant Sells, while Defendant Huneycutt rode in a separate unmarked patrol car with other officers. (*Id.* ¶¶ 7-9.)

Defendant Efird asserts that when Plaintiff turned into the gas station parking lot, Defendant Efird drove his patrol car toward Plaintiff and proceeded to exit the vehicle. (*Id.* ¶ 11.) Plaintiff then took off south on Highway 138 for approximately five miles, exceeding "speeds of over 100 miles per hour[,]" before turning right onto Union Grove Church Road. (*Id.* ¶ 12.) With law enforcement in pursuit, Plaintiff continued speeding, "crossing the double yellow lines multiple times," and nearly running off the road. (*Id.* ¶¶ 13-14.) Plaintiff eventually slowed down and pulled into the driveway of a private residence located at 20115 Union Grove Church Road. (*Id.* ¶ 14.)

After Plaintiff pulled over, Defendant Efird pulled up next to his car and Defendant Sells exited the vehicle, holding Plaintiff at gunpoint. (*Id.* ¶¶ 14-15.) Plaintiff proceeded to open the driver's side door of the vehicle. (*Id.* ¶ 15.) Considering Plaintiff's history, including fleeing arrest and the possibility of him carrying a firearm, and to ensure the safety of the officers, Defendant Efird commanded K-9 Bodi to perform a controlled apprehension on Plaintiff. (*Id.*) Defendant Efird asserts that K-9 Bodi engaged Plaintiff for five to ten seconds before Defendant Efird called him off and Plaintiff was handcuffed. (*Id.* ¶ 16.) When Defendant Efird ordered K-9 Bodi to release his bite, he noticed that the dog's teeth were caught in Plaintiff's jacket. (*Id.*) It took Defendant Efird "about a minute" to get K-9 Bodi's teeth out of Plaintiff's jacket. (*Id.*) Emergency medical services were called to the scene, and Plaintiff was subsequently taken to the hospital by the officers to get medically cleared. (*Id.* ¶ 17, 20.) At the hospital, Plaintiff received treatment, including arm bandages on his shoulder, and a band aid under his arm. (Pl.'s Dep. at 22-23.) After Plaintiff was treated at the hospital, he was transported to the Stanly County Detention Center. (Efird Decl. ¶ 21.)

8

According to Defendant Efird, after Plaintiff was arrested Defendant Morgan went back to the location where Plaintiff had run off the road during the chase. (*Id.* ¶ 18.) There, Defendant Morgan found multiple bags of methamphetamine laying on the side of the road. (*Id.* ¶ 19.) As a result, Plaintiff was charged with multiple offenses (*id.* ¶ 21), and eventually pled guilty to use of a cellular phone to facilitate unlawful distribution of methamphetamine. (*See* Judgment in 1:21CR157-1, at 2.)

Defendant Porras asserts that he served Plaintiff with outstanding traffic violations shortly after Plaintiff arrived at the Stanly County Jail. (Porras Decl. ¶ 3.) After handing Plaintiff the documents, Defendant Porras turned to leave the holding area, then noticed Plaintiff following behind him after being instructed by another officer to return to the booking desk. (*Id.* ¶¶ 4-5.) Defendant Porras recounts that when he attempted to bring Plaintiff back to the booking desk, Plaintiff became "argumentative and physical," leading to Defendant Porras physically restraining Plaintiff. (*Id.* ¶ 6.) Plaintiff then spit in Defendant Porras's face. (*Id.* ¶ 7; Pl.'s Dep. at 25.) Defendant Porras responded by smacking Plaintiff's face, forcibly restraining him on the ground, and handcuffing him with the assistance of other officers. (Porras Decl. ¶ 8.) As a result of this interaction, Plaintiff was charged with malicious conduct by a prisoner. (*Id.* ¶ 9.)

In support of Plaintiff's motion for summary judgment or partial judgment, he primarily relies on his Complaint and Defendants' Amended Answer to the Complaint to demonstrate the lack of any genuine issue of material fact as to his claims. (*See* Docket Entry 40.) Plaintiff also attached Defendants' response to certain document discovery requests

9

(Docket Entry 40-1), and a State Magistrate Order finding probable cause for Plaintiff's warrantless arrest during the first incident on November 1, 2019. (Docket Entry 41.)

Additionally, in response to Defendants' motion for summary judgment, Plaintiff refutes multiple arguments by Defendants, and contends that excerpts from his deposition testimony should be excluded in light of his mental status during the deposition. (*See* Docket Entry 42 at 4-6.) Plaintiff also filed an extension of time to submit evidence in connection with his response to Defendants' summary judgment motion (Docket Entry 43), which the Court will grant to the extent it considers the additional evidence associated with Plaintiff's response (*see* Docket Entries 45, 46). While those documents include some information already provided by Defendants or Plaintiff himself, Plaintiff also included Stanly County Sheriff's Office case files of the November 1, 2019 police pursuit, more deposition excerpts from Plaintiff, and prison health records. (*See id.*)[4]

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick*

---

[4] Plaintiff has also filed an extension of time to submit evidence in connection with his purported sur-reply to Defendants' motion for summary judgment (Docket Entry 48.) Plaintiff has attached his proposed sur-reply. (Docket Entry 48-1.) The Court construes this extension as a request for an extension of time to file the proposed sur-reply itself, and including any related evidence. A party does not have a right to file a sur-reply, and the undersigned finds no reason to consider it. *See DiPaulo v. Potter*, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010) ("Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply."). In any event, it appears that Plaintiff may have abandoned his attempt to submit additional evidence (*see* Docket Entry 50), and the Court otherwise concludes that Plaintiff's sur-reply is a rehashing of the arguments previously made, none of which will alter the recommendation herein. Therefore, Plaintiff's motion for an extension of time (Docket Entry 48) will be denied.

*v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met her burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear her burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment[.]" *Anderson*, 477 U.S. at 255. "When faced with cross-motions for summary

judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.' " *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

### Defendants' Motion for Summary Judgment

A. <u>Stanly County and Stanly County Sheriff's Office</u>

Defendants first argue that Stanly County and the Stanly County Sheriff's Office are not proper parties to this action. (Docket Entry 38 at 7-8.) Defendants are correct. "Under North Carolina law, the Office of the Sheriff is 'separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county.' " *Cranford v. Frick*, No. 1:05CV00062, 2007 WL 676687, at *3 (M.D.N.C. Feb. 28, 2007) (citing N.C. Gen. Stat. § 162-1 (2000)). Further, it is "[t]he sheriff, not the county, [that] has final policymaking authority over the personnel decisions in his office." *Little v. Smith*, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000) (citation omitted); *see also Cranford*, 2007 WL 676687 at *3 (dismissing plaintiff's official capacity claim against Stanly County because the Stanly County Sheriff's Office had final policymaking authority over the employees whose actions allegedly harmed plaintiff). As a result, Stanly County is not liable for Defendants' alleged misconduct and should be dismissed.

Furthermore, "[s]tate law dictates whether a government agency has the capacity to be sued in federal court." *Efird v. Riley*, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004) (citing *Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir. 1981)). In North Carolina, a county is a legal entity that may be sued. *See* N.C. Gen. Stat. § 153A-11. "However, there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department." *Parker v.*

*Bladen Cnty.*, 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). Accordingly, the Stanley County Sheriff's Office should be dismissed from this action. *See Nasiri v. Orange Cnty. Sheriff's Off.*, No. 1:21CV541, 2021 WL 4690574, at *3 (M.D.N.C. Oct. 7, 2021) (collecting cases) (sheriff's department not legal entity subject to suit); *Torchia v. Cherokee Cnty. Sheriff's Dep't*, No. 2:14-CV-00020-MR-DLH, 2015 WL 248280, at *2 (W.D.N.C. Jan. 20, 2015) (collecting cases) (same).

B. <u>Official Capacity Claims</u>

Defendants next contend that Plaintiff's official capacity claims should be dismissed as Plaintiff makes no allegations that any policy, practice, or custom of the Stanly County Sheriff's Office caused a violation of his rights. (Docket Entry 38 at 8-9.) The undersigned agrees. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). However, a "municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.' " *Riddick v. School Bd. of City of*

*Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).

> Policies and customs for which municipal liability may arise are:
>
> > (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle*, 326 F.3d at 471 (citation omitted).  It is not enough for a plaintiff to merely "identify conduct properly attributable to the municipality."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).  Instead, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged."  *Id.* (internal quotations omitted).

Here, Plaintiff points to no policy, practice, or custom of the Stanly County Sheriff's Office which caused a violation of his rights.  Thus, the official capacity claims against Defendants should be dismissed.[5]  Plaintiff attempts to argue that Defendant Efird and K-9 Bodi lack proper training in light of Plaintiff's two encounters with K-9 Bodi, which Plaintiff contends were both excessive.  (Docket Entry 42 at 7.)  However, Plaintiff's argument is conclusory and without factual support, which is not enough to raise a genuine issue of material fact as to this issue.  Furthermore, as discussed below, the undersigned concludes that Defendant Efird's conduct on November 1, 2019, did not amount to excessive force.  Where

---

[5] The undersigned will separately discuss the reasons for dismissal of the state law official capacity claims.

"there are no underlying constitutional violations by any individual, there can be no municipal liability." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999); *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) ("It is axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee.") (internal quotations and citation omitted). Therefore, Defendants should be granted summary judgment on this issue.

C. Excessive Force Claims

Defendants next contend that any individual capacity excessive force claims against them should be dismissed. (Docket Entry 38 at 9-13.) Plaintiff asserts several incidents of excessive force, which the undersigned will address in turn. First, Plaintiff asserts that Defendants Efird, Sells, Huneycutt, and Morgan engaged in excessive force when Plaintiff was thrown to the ground and subsequently attacked by K-9 Bodi. (*See* Compl. at 30.) The Fourth Amendment secures the right "to be free from unreasonable searches and seizures." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006) (citation omitted). "The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive force by a police officer in effectuating an arrest." *Livingston v. Kehagias*, 803 F. App'x 673, 683 (4th Cir. 2020) (quoting *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019); *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 758 (4th Cir. 2004) ("The Fourth Amendment governs claims of excessive force during the course of an arrest, *investigatory stop,* or other 'seizure' of a person." (internal quotations and citation omitted) (emphasis in original)). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts employ an "objective reasonableness" standard to determine whether an

officer has used excessive force violative of the Fourth Amendment. *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004); *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). Thus, "[t]he relevant question is 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.' " *Streater v. Wilson*, 565 F. App'x 208, 211 (4th Cir. 2014) (quoting *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir. 1996)).

"Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal quotations, bracket, and citations omitted). "Recognizing that police officers are often forced to make split-second judgments—in circumstances that are tense . . . and rapidly evolving—[courts must] take care to consider the facts from the perspective of a reasonable officer on the scene, and avoid judging . . . with the 20/20 vision of hindsight." *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002) (internal quotations and citation omitted). Moreover, "we must consider the facts at the moment that the challenged force was employed[,]" and "view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal quotations and citations omitted).

Here, at the outset, while Plaintiff asserts excessive force claims against multiple Defendants, "[a]s a general matter, a law officer may incur [individual Section] 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th

Cir. 2002) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535-36 (1981)). Thus, "it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations and citation omitted). There is no basis here to find liability on the part of Defendants Efird, Huneycutt, or Morgan as only Defendant Sells was involved in throwing Plaintiff to the ground. (*See* Pl.'s Dep. at 11-12.) In addition, there is no basis to find liability on the part of Defendants Sells, Huneycutt, or Morgan for K-9 Bodi biting Plaintiff; Defendant Efird was the handler and would have means to control the dog. (*See* Efird Decl. ¶¶ 2, 15 (Defendant Efird partnered with K-9 Bodi since 2017; other officers during incident had no ability to control K-9 Bodi).) For these reasons, summary judgment should be granted in favor of Defendants Huneycutt and Morgan on the excessive force claim. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("[T]he official's *own* individual actions must have violated the Constitution.") (internal quotations and citation omitted) (emphasis added); *Carrothers v. Huneycutt*, No. 3:08-CV-241-RJC, 2012 WL 1021725, at *4 (W.D.N.C. Mar. 26, 2012) ("Huneycutt had no control over [canine] and . . . therefore, . . . is entitled to summary judgment as to Plaintiff's claim against him for excessive force."); *Edwards v. High Point Police Dep't*, 559 F. Supp. 2d 653, 661 (M.D.N.C. 2008) (finding summary judgment warranted where "it is undisputed that [non-canine handler] had no means to control canine").

Furthermore, in assessing the *Graham* factors, the undersigned concludes that the conduct here by Defendants Sells and Efird was objectively reasonable in light of the circumstances. Suspecting Plaintiff of drug trafficking, Defendants set up a controlled buy to which Plaintiff fled the scene, leading Defendants on a high-speed chase. (Efird Decl. ¶¶ 6-

17

12.)[6]  In addition, Plaintiff crossed the double lines on the road multiple times and nearly ran off the road.  (*Id.* ¶¶ 13-14.)  These facts demonstrate that the officers had reason to believe that Plaintiff was a potentially dangerous individual; therefore, the first *Graham* factor weighs in Defendants' favor.  *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 900 (4th Cir. 2016) (recognizing that the first *Graham* factor "is intended as a proxy for determining whether an officer had any reason to believe that the subject of a seizure was a potentially dangerous individual" (internal quotations, citation, and alterations omitted)).

Next, the second and third *Graham* factors also weigh in Defendants' favor.  As indicated above, Plaintiff was fleeing from an undercover operation at high speeds, and Plaintiff had previously fled police earlier in the year and was subject to a previous encounter with K-9 Bodi.  His conduct posed an immediate threat to the safety of the officers or others, and he was attempting to evade an arrest.  Moreover, Defendants Sells and Efird's use of force was proportional in light of all the circumstances.  *Id.* at 899 ("To properly consider the reasonableness of the force employed we must view it in full context, with an eye toward the proportionality of the force in light of all the circumstances" (internal quotations and citation omitted)).

As to Defendant Sells, throwing Plaintiff to ground was proportional to the circumstances as Plaintiff had just led officers on a high-speed chase after fleeing from an undercover operation.  Even assuming that Defendant Sells had his gun pointed at Plaintiff and pulled Plaintiff out of the vehicle before throwing him to the ground (*see* Pl.'s Dep. at 11-

---

[6] Plaintiff questions whether his speed was more than 100 miles per hour, but he admits to probably going over the speed limit and headed off the road, nearly hitting a mailbox.  (*See* Pl.'s Dep. at 7, 9-10.)

12), the force used was proportionate based upon all that had transpired to this point. As to Defendant Efird, his command to K-9 Bodi to apprehend Plaintiff was proportionate in light of the circumstances. Prior to being handcuffed, K-9 Bodi bit Plaintiff for a matter of seconds before being ordered to release his bite. (*See* Efird Decl. ¶ 16.) Plaintiff stated in his deposition that the dog was on him for a "couple of minutes," (*see* Pl.'s Dep. at 15; *see also* Docket Entry 45 at 15)[7], but Defendant Efird states that K-9 Bodi's teeth got caught in Plaintiff's jacket and it took Defendant Efird about a minute to untangle K-9 Bodi. (Efird Decl. ¶ 16.) Plaintiff believes K-9 Bodi bit him "at least five times for sure" with no prior command from officers, and, again, the entire encounter with the dog was "probably a couple minutes." (Pl.'s Dep. at 13, 15.)

The undersigned concludes that the amount of force used by Defendants Sells and Efird during their encounter with Plaintiff was objectively reasonable under the circumstances. Suspecting of drug trafficking with a prior history of fleeing law enforcement, Plaintiff engaged officers in a high speed chase this time fleeing from an undercover operation and driving dangerously. As previously stated, "officers are often forced to make split-second judgments—in circumstances that are tense . . . and rapidly evolving." *Clem*, 284 F.3d 550 (internal quotations and citation omitted). Defendant Sells's throwing of Plaintiff to the ground, and the subsequent release of K-9 Bodi, in the tense, rapidly evolving situation by Plaintiff's flight from law enforcement was objectively reasonable. That Plaintiff was not given a warning prior to K-9 Bodi's encounter is not a constitutional violation under the

---

[7] Plaintiff included some additional pages of his deposition transcript in support of his response to Defendants' motion for summary judgment.

circumstances given the immediate threat to safety the officers faced. *See Est. of Rodgers ex rel. Rodgers v. Smith*, 188 F. App'x 175, 181-82 (4th Cir. 2006) (no constitutional violation despite lack of warning to deploy dog); *see also Moya v. City of Clovis*, No. CV 18-494 GBW/KRS, 2019 WL 6255217, at *5 (D.N.M. Nov. 22, 2019) ("With or without a warning, deploying a police dog may be objectively reasonable where the second *Graham* factor is present: an immediate threat to the safety of officers and the community."), *aff'd*, 829 F. App'x 346 (10th Cir. 2020).

Moreover, that K-9 Bodi's teeth got caught in Plaintiff's jacket, essentially prolonging the encounter, did not amount to excessive force. Defendant Efird took about a minute to untangle the dog, and while Plaintiff suffered injuries as a result of the incident, "[t]his is, of course, regrettable and unfortunate." *Edwards*, 559 F. Supp. 2d at 661. While Plaintiff essentially argues he was in compliance and not resisting at the point Defendant Sells approached Plaintiff's vehicle (*see* Docket Entry 42 at 9), Plaintiff ignores the nature of the circumstances, including the police chase prompted by his own conduct.[8] *See Stephens v. Kern*,

---

[8] Moreover, to refute multiple arguments by Defendants, Plaintiff contends that excerpts from his deposition testimony "should not be allowed to be used as evidence against [him] due to Plaintiff being under the influence of Prazosin medication that was prescribed by [a] psychologist to help Plaintiff recover from his struggles with PTSD caused by Defendants['] use of unnecessary force." (Docket Entry 42 at 4; *see also id.* at 5-6.) This argument is without merit. Depositions may be used in support of a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). Plaintiff's deposition errata sheet does not mention any issues regarding being under the influence. *See* Docket Entry 47-1. Further, while Plaintiff mentioned during the deposition that he takes medication (see Docket Entry 45 at 19), there is no reason to conclude that Plaintiff's mental status during the deposition renders his deposition testimony inadmissible for purposes of summary judgment. *See Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-0612, 2017 WL 5618093, at *3 (M.D. Tenn. Oct. 27, 2017) ("The Court has reviewed the entire deposition transcript and finds no support for a conclusion that, 1) Plaintiff's mental or emotional state during the deposition renders her deposition testimony inadmissible or excludable, or, 2) the questioning of Plaintiff by Defendant's counsel during the deposition was improper."); *Reeder v. Bishop*, No. 915CV1078MADTWD, 2019 WL 3732050, at *6 (N.D.N.Y. Aug. 8, 2019) ("Absent some indication that the deposition was unfair or unreasonable, the Court will not wholly exclude such testimony.").

20

No. 3:17-CV-00952, 2019 WL 611510, at *13 (S.D.W. Va. Jan. 17, 2019) ("Plaintiff has . . . argued that he was 'fully complying' . . . with . . . commands . . . and not resisting, however, Plaintiff completely disregards . . . that he was actively fleeing by vehicle . . . in the events leading up to the deployment of the K-9 unit to effectuate the arrest."), *report and recommendation adopted*, No. CV 3:17-0952, 2019 WL 609647 (S.D.W. Va. Feb. 13, 2019). As Plaintiff posed a threat to Defendants and others, the undersigned concludes that Defendants Sells and Efird did not exercise excessive force while apprehending Plaintiff, and therefore his Fourth Amendment rights were not violated. *See Carrothers*, 2012 WL 1021725, at *6 (finding that "even if [officer] *had* intentionally seized Plaintiff through the use of the canine Vago, the amount of force used was reasonable under the circumstances" (emphasis in original)).[9]

Plaintiff also brings an excessive force claim against Defendant Porras for the November 1, 2019 incident occurring at the Stanley County Jail. This claim is assessed under the Fourteenth Amendment objective reasonableness standard as Plaintiff was a pretrial detainee during the incident. *See Graham*, 490 U.S. 386, 395 n.10 ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (citation omitted)). Under the Fourteenth Amendment, pretrial detainees may not be subject to punishment. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive

---

[9] As the undersigned has found Defendants' actions objectively reasonable, Plaintiff's state law excessive force claim also fails. *See Little v. Smith*, 114 F. Supp. 2d 437, 445 (W.D.N.C. 2000) ("[T]he North Carolina Constitution is co-extensive with the Constitution of the United States on the issue of excessive force[.]"); *Mackey v. City of Gastonia*, No. 3:21CV544-GCM, 2022 WL 16924127, at *4 (W.D.N.C. Nov. 14, 2022) ("As the Court has found that Officer's Fulton's actions were objectively reasonable as a matter of law, Plaintiff's state law excessive force claim must fail."), *appeal dismissed*, No. 22-2277, 2023 WL 3974993 (4th Cir. Feb. 23, 2023).

force, by deliberate indifference to conditions of confinement, or otherwise."). A pretrial detainee seeking to prove an excessive force claim need only show that the officers' use of force was objectively unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A plaintiff can "prevail by showing that the [defendants'] actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.' " *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The following considerations, among others, may bear on the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397 (citing *Graham*, 490 U.S. at 396). Again, the "court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted).

Here, the undersigned concludes that Defendant Porras's use of force was objectively reasonable in light of the circumstances. Plaintiff was initially instructed by another officer to return to the booking desk, but instead of complying he followed Defendant Porras as if he were attempting to exit. (Porras Decl. ¶ 5.) Plaintiff admits he "got into it" with Defendant Porras. (Pl.'s Dep. at 25.) Defendant Porras smacked Plaintiff and pushed him to the ground only after Plaintiff spit in Defendant Porras's face, committing a felony on Defendant Porras. (Porras Decl. ¶¶ 7-9.) While Plaintiff alleges that he was choked until he lost consciousness, his own allegations indicate that it was "a few seconds" (*see* Compl. at 23). In any event, the

force used by Defendant Porras was to prevent another assault and given Plaintiff's conduct in the booking area, officers were faced with a serious security problem. There is no evidence that Defendant Porras used more force than reasonably warranted under the circumstances. For these reasons, summary judgment should be granted in his favor. *See Sisk v. Holden*, No. 1:18-CV-00366-MR, 2020 WL 7714713, at *6 (W.D.N.C. Dec. 29, 2020) ("Plaintiff was cursing, yelling, and threatening Defendant Holden and outwardly manifesting an intention to assault Holden. Despite several attempts by Holden to calm Plaintiff without the use of force, Plaintiff persisted . . . . Defendant Holden's use of force on Plaintiff was objectively reasonable . . . under these circumstances.").[10]

Alternatively, Defendants Efird, Sells and Porras argue that they are entitled to qualified immunity because their use of force did not violate a clearly established right. (*See* Docket Entry 38 at 13-14, 23.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its

---

[10] For the same reasons, any state law excessive force claim against Defendant Porras also fails. *See supra* note 9.

violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendants did not use excessive force. Therefore, the undersigned concludes that Defendants should be entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

D. <u>Bystander Liability</u>

Defendants next contend that Plaintiff's claim for relief under the theory of bystander liability should also be dismissed. (Docket Entry 38 at 14-15.) The undersigned agrees. Plaintiff asserts a bystander liability claim against Defendants Huneycutt, Morgan and Callicutt for their alleged presence, yet inaction during K-9 Bodi's encounter with Plaintiff. (*See* Compl. at 31.) The Fourth Circuit has held that "bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall*, 302 F.3d at 203. Thus, "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204 (footnote omitted). Here, as the undersigned previously noted, there is no underlying constitutional violation with regard to Defendant Efird and K-9 Bodi's encounter with Plaintiff. Therefore, bystander liability cannot attach, and Plaintiff's claim fails as a matter of law. *See Whitener v. Rutherford Cnty. Det. Ctr.*, No. 1:21-CV-00048-MR, 2023 WL 5673970, at *10 (W.D.N.C. Sept. 1, 2023) ("As the use of force was objectively reasonable, the Plaintiff's

24

claims for failure to intervene necessarily fail."); *Marshall v. Odom*, 156 F. Supp. 2d 525, 531 (D. Md. 2001) ("In the absence of any underlying use of excessive force against the Plaintiff, liability cannot be placed on . . . Officer Tindal for failing to intervene . . . .").[11]

E. <u>Malicious Prosecution</u>

Defendants next contend that Plaintiff's Fourth Amendment malicious prosecution claim fails. (Docket Entry 38 at 15-16.) To succeed on such a claim, a plaintiff must show that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017). The Supreme Court has further explained that a "Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

As to probable cause, such showing requires that "the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984). "[P]robable cause is a fluid concept," *Illinois v. Gates*, 462 U.S. 213, 232 (1983), judged by the "totality-of-the-circumstances," *id.* at 230. Assessing probable cause "turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense

---

[11] Any parallel state law claim would likewise fail.

thought to be committed by that conduct." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017)

(internal quotations and citation omitted). As explained in another opinion in this Court:

> In effectuating an arrest, officers only "need probable cause that
> *a* crime has been committed, not that the criminal defendant
> committed all of the crimes for which he or she is later charged."
> *Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994); *see also District
> of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 585 n.2, 199
> L.Ed.2d 453 (2018) (noting that "an arrest is lawful if the officer
> had probable cause to arrest *for any offense*, not just the offense
> cited at the time of arrest or booking") (emphasis added). Simply
> put, "[p]robable cause need only exist as to any offense that could
> be charged under the circumstances." *McMillian v. LeConey*, No.
> 5:09-CV-175, 2011 WL 2144628, at *8 (E.D.N.C. May 31, 2011)
> (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.
> 1994)), *aff'd*, 455 F. App'x 295 (4th Cir. 2011). Because, "[f]or
> fourth-amendment purposes, an arrest on multiple charges is
> a single transaction," *Wilkerson v. Hester*, 114 F. Supp. 2d 446, 456
> (W.D.N.C. 2000), the task for a reviewing court consists merely
> of determining "that there was probable cause to arrest for at
> least one charge," *Johnson v. City of Greenville*, No. 4:15-CV-00064,
> 2015 WL 7854564, at *7 (E.D.N.C. Dec. 3, 2015).

*McAllister v. Winston-Salem Police Dep't*, No. 1:19CV13, 2023 WL 2239474, at *9 (M.D.N.C. Feb.

27, 2023) (emphasis in original), *report and recommendation adopted sub nom.*, No. 1:19-CV-13, 2023

WL 8604205 (M.D.N.C. Apr. 4, 2023). In North Carolina, "[a]n officer may arrest without a

warrant any person who the officer has probable cause to believe (1) has committed a criminal

offense in the officer's presence, or (2) has committed a felony." *State v. Hardy*, 31 N.C. App.

67, 69, 228 S.E.2d 487, 489 (1976).

Here, after Plaintiff was transported to the Stanly County Detention Center, he was

charged with felony speeding to elude arrest, trafficking in methamphetamine, speeding, failing

to heed a blue light or siren, driving with a revoked license, possession with intent to sell and

distribute marijuana, and maintaining a dwelling for storing controlled substances. (Efird Decl. ¶ 21.) There was probable cause to arrest Plaintiff for at least one of the offenses. Indeed, Plaintiff concedes that he was "probably" driving above the speed limit and driving with a revoked license. (Pl.'s Dep. at 7, 9, 10.) In addition, the chase was a result of Plaintiff fleeing officers from the undercover operation. *See* N.C. Gen. Stat. § 20-141.5 (making it a felony for a person to flee a law enforcement officer in the lawful performance of his duties if the driver is speeding in excess of 15 miles per hour over legal limit and driving with a revoked license.). Ultimately, given the facts and circumstances within the Defendants' knowledge at the time of the incident, there was probably cause for Plaintiff's arrest for at least one charge. Therefore, Plaintiff's § 1983 malicious prosecution claim fails.[12]

### F. Negligence/Gross Negligence

Defendants also move to dismiss Plaintiff's state law claims of negligence and gross negligence under the doctrines of public official immunity and governmental immunity. (Docket Entry 38 at 16-18.) "In North Carolina, governmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function." *Schlossberg v. Goins*, 141 N.C. App. 436, 439, 540 S.E.2d 49, 52 (2000). A sheriff "waives governmental immunity when a county purchases liability insurance which

---

[12] Because the undersigned finds that Defendants had probable cause to arrest Plaintiff, his state law claim for malicious prosecution would also fail. *See Nguyen v. Burgerbusters, Inc.*, 182 N.C. App. 447, 450, 642 S.E.2d 502, 505 (2007) (setting forth elements for malicious prosecution claim under North Carolina state law); *Gregory v. Bruce*, No. 1:15CV996, 2018 WL 1276812, at *6 (M.D.N.C. Mar. 9, 2018) ("The presence of probable cause necessarily defeats [a] plaintiff's claim" for malicious prosecution.).

27

provides coverage to the sheriff." *White v. Cochran*, 229 N.C. App. 183, 190, 748 S.E.2d 334, 340 (2013) (citation omitted). Governmental immunity may also be waived by "purchasing a sheriff's bond pursuant to N.C. Gen. Stat. § 58-76-5," *Efird v. Riley*, 342 F. Supp. 2d 413, 425 (M.D.N.C. 2004), but "only to the extent of the amount of the bond." *Cochran,* 229 N.C. App. at 190, 748 S.E.2d at 339. "A plaintiff bringing claims against a governmental entity and its employees acting in their official capacities must allege and prove that the officials have waived their sovereign immunity or otherwise consented to suit; by failing to do so, the plaintiff fails to state a cognizable claim against either the official or the governmental entity." *Sellers v. Rodriguez*, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002).

Here, Plaintiff has failed to timely allege a waiver of governmental immunity or consent. As such, any official capacity claims against Defendants under state law should be dismissed. *See Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) ("In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity."); *Vest v. Easley*, 145 N.C. App. 70, 74, 549 S.E.2d 568, 573 (2001) ("It is well-established law that with no allegation of waiver in a plaintiff's complaint, the plaintiff is absolutely barred from suing the state and its public officials in their official capacities in an action for negligence.")

Under the doctrine of public official immunity, "a public official is generally immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Schlossberg v. Goins,* 141 N.C.App. 436, 445, 540 S.E.2d 49, 56 (2000) (internal quotations, brackets, and citation omitted). "A defendant acts with

28

malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Here, to deny Defendants Efird, Sells, Huneycutt, Morgan, Callicutt and Porras the protection of public official immunity at the summary judgment stage, there must exist a genuine issue of material fact as to whether their actions were corrupt, malicious, beyond the scope of their duties, in bad faith, or willful and deliberate. *See Campbell v. Anderson,* 156 N.C. App. 371, 377, 576 S.E.2d 726, 730 (2003). The record is devoid of any such evidence. As such, said Defendants are entitled to public official immunity and summary judgment should be granted in their favor. *See Craven v. Novelli,* 661 F. Supp. 3d 430, 453-54 (W.D.N.C. 2023) (officers entitled to public official immunity where no acts of malice); *Petersen v. Midgett,* 140 F. Supp. 3d 490, 504-05 (E.D.N.C. 2015) (public official immunity barring negligence and gross negligence claims where there was no malice or corrupt acts); *Layman v. Alexander,* 294 F. Supp. 2d 784, 796 (W.D.N.C. 2003) ("While Plaintiff also alleges that Sheriff Alexander was grossly negligent, the Fourth Circuit has previously concluded that, as with allegations of mere negligence, allegations of gross negligence are also not sufficient to pierce a public official's immunity from individual liability."); *see also Caraway v. City of Pineville,* 639 F. Supp. 3d 560, 587 (W.D.N.C. 2022) ("[T]he Court has already found the officers' response to the circumstances was objectively reasonable, which refutes Plaintiff's allegation of malice.").

D. <u>Negligent Inflication of Emotional Distress/Intentional Inflication of Emotional Distress</u>

Defendants also move to dismiss Plaintiff's claims for negligent inflication of emotional distress and intentional inflication of emotional distress. (Docket Entry 38 at 18-19.) Again, to the extent asserted against Defendants in their official capacity, such claims should be dismissed based upon Plaintiff's failure to allege waiver of governmental immunity. *See Paquette*, 155 N.C. App. At 418, 573 S.E.2d at 717; *Vest*, 145 N.C. App. at 74, 549 S.E.2d at, 573. For the individual capacity claim for negligent inflication of emotional distress, Defendants are entitled to public official immunity for the same reasons as his negligence claims. *See Shaw v. Stroud*, 13 F.3d 791, 803 (4th Cir. 1994) ("A negligent inflication of emotional distress claim, by its very definition, necessarily alleges only negligence."). As to the individual capacity claim for intentional inflication of emotional distress, this claim too fails. "The essential elements of a claim for intentional inflication of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.' " *Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994) (*Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Extreme and outrageous conduct is that which "shocks the conscience or exceeds all bounds of decency tolerated by society" and "must be so outrageous in character, and so extreme in degree, . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Russ v. Causey*, 732 F. Supp. 2d 589, 607 (E.D.N.C. 2010), *aff'd in part*, 468 F. App'x 267 (4th Cir. 2012) (internal quotation, brackets, and citation omitted). Here, none of Defendants' conduct was extreme and otherwise exceeding all bounds of decency. Instead, Defendants' conduct was

Case 1:22-cv-00613-LCB-JLW    Document 51    Filed 02/23/24    Page 30 of 35

reasonable under the circumstances. Therefore, Plaintiff's claim for intentional infliction of emotional distress fails.

E. <u>Deliberate Indifference</u>

Plaintiff also asserts a deliberate indifference claim against Defendant Efird. (Compl. at 39.) Plaintiff's allegations are grounded in what he believes is an unreasonable delay in treatment based on Defendant Efird not allowing Plaintiff to ride in the ambulance and then subsequently taking about fifteen minutes to get Plaintiff to the hospital. (*Id.*) Defendants contend this claim is subject to dismissal as Defendants were not deliberately indifferent to a serious medical need and on the basis of qualified immunity. (Docket Entry 38 at 19-20.) "Historically, a claim for deliberate indifference required showing that the defendant *actually knew of and ignored* (the subjective prong) a detainee's serious need for medical care (the objective prong)." *Lapp v. United States*, No. 123CV00248MSNLRV, 2023 WL 8628314, at *6 (E.D. Va. Dec. 13, 2023) (emphasis in original) (citing *White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). However, the Fourth Circuit has recently clarified pre-trial detainees may state a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm "on the purely objective basis that the governmental action they challenge is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (internal quotations and citation omitted). Thus, a pre-trial detainee need only show "that the defendant's action or inaction was ... objectively unreasonable." *Id.* (internal quotations and citation omitted); *accord Lapp*, 2023 WL 8628314, at *6.

The undersigned concludes that to the extent there was any delay in medical care as a result of Defendant Efird's action or inaction, such was not objectionable unreasonable rising to a constitutional violation. His medical records from the emergency room visit reflect he was in "no acute distress" and had "scattered superficial abrasions to the right posterior scapular region," a 2 centimeter "linear laceration," "no overt contamination" and "no active bleeding." (Docket Entry 21 at 2-3.) Plaintiff was alert, oriented, and cooperative. (*Id.* at 3.) During his deposition, Plaintiff calls into question some descriptions provided in the medical records (*see* Pl.'s Dep. at 21-22) but does not otherwise forecast evidence demonstrating substantial harm. *See Smith v. Walker*, 845 F. Supp. 2d 673, 677 (W.D.N.C.) ("Delay in medical care, without showing substantial harm, does not violate the [Constitution]."), *aff'd*, 476 F. App'x 417 (4th Cir. 2012). Ultimately, Plaintiff has not shown that a delay in getting to the hospital caused substantial harm. *Lewis v. Eagleton*, No. C/A 4:08-CV-02800GRA, 2010 WL 755636, at *8 (D.S.C. Feb. 26, 2010) ("There is no competent evidence in the record to show the delay . . . caused any harm."), *aff'd*, 404 F. App'x 740 (4th Cir. 2010). Thus, Defendant Efird should be entitled to summary judgment on this claim.

F. Fourteenth Amendment "Pain and Suffering" Claim

Plaintiff also brings a purported claim for "pain and suffering" under the Fourteenth Amendment. (*See* Compl. at 35-36.) At its core, Plaintiff is alleging "pain and suffering" as a result of his encounter with K-9 Bodi. (*See id.*) Even in the most liberal reading, the undersigned construes Plaintiff's claim as redundant claims of excessive force under the Fourth Amendment and bystander liability. For reasons already discussed, such claims fail.

32

G. <u>Failure to Investigate, Supervise, and Discipline</u>

Lastly, Defendants assert that Plaintiff's state law claim for failure to investigate, supervise, and discipline should be dismissed.  (Docket Entry 38 at 24.)  Similar to Plaintiff's other state law claims in their official capacity, this claim should be dismissed based upon Plaintiff's failure to allege a waiver of governmental immunity.  Also, to the extent asserted against Defendant Crisco in his individual capacity, this claim is barred by public official immunity as the record is void of any malice or corruption on the part of Defendant Crisco. *See Meyer v. Walls*, 347 N.C. 97, 112, 489 S.E.2d 880, 889 (1997) ("As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." (internal quotation and citation omitted)); *Kloepfer, et al., v. Cherokee County Sheriff's Dep't, et al.,* No. 1:23-CV-158-MOC-WCM, 2023 WL 8421067, at *9 (W.D.N.C. Dec. 4, 2023) ("[T]he individually named Defendants enjoy public official immunity as to the claims for negligence, . . . . negligent retention and hiring/supervision."); *Layman*, 294 F. Supp. 2d at 795-96 (no allegations of corruption or malice).  Therefore, summary judgment should be granted in favor of Defendant Crisco on this claim.

**Plaintiff's Motion for Summary Judgment or Partial Judgment**

Plaintiff moves for summary judgment or partial judgment as to most of the claims against Defendants in this matter.  (Docket Entry 40.)  As determined above and based on the facts in the light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact and summary judgment should be granted in favor of Defendants Crisco, Efird, Huneycutt, Morgan, Sells, Callicutt, Porras, Stanly County, and the Stanley County Sheriff's

Office.  Therefore, Plaintiff's motion for summary judgment should be denied.  *See Grady v. McPhearson*, No. 5:17-CT-3211-FL, 2020 WL 5821840, at *5 (E.D.N.C. Sept. 30, 2020) ("Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail."), *aff'd sub nom. Grady v. McPherson*, 840 F. App'x 745 (4th Cir. 2021).

### John Doe Defendant

Plaintiff has named a John Doe Defendant in this action, apparently an individual associated with the Norwood Police Department.  (*See* Compl. at 12, 29.)  "[A] John Doe defendant must be identified by the time the issues are adjudicated on their merits, as the Fourth Circuit has determined that judgments may not be entered against unnamed defendants."  *Myers v. City of Charleston*, No. 2:19-CV-00757, 2021 WL 925326, at *10 (S.D.W. Va. Mar. 10, 2021) (citation omitted).  Thus, as Plaintiff has not properly named or identified said John Doe Defendant, nor served him with process in this case, the undersigned recommends he be dismissed without prejudice.  *See Bellamy v. Dewitt*, No. 4:19-CV-01673-RBH, 2020 WL 3440861, at *1 n.4 (D.S.C. June 23, 2020) ("The Court dismisses Defendant John Doe without prejudice because discovery has ended and Plaintiff never substituted a named defendant in place of Doe."); *Attkisson v. Holder*, 925 F.3d 606 (4th Cir. 2019) (affirming dismissal of unnamed John Doe defendants), *as amended* (June 10, 2019).

### III.    CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that Plaintiff's letter motion for an extension of time to submit evidence in connection with his response to

Defendants' summary judgment motion (Docket Entry 43) is GRANTED to the extent that the Court considers the additional evidence associated with Plaintiff's response, and Plaintiff's letter motion for an extension of time to submit evidence in connection with his purported sur-reply to Defendants' motion for summary judgment (Docket Entry 48) is DENIED.

Furthermore, IT IS HEREBY RECOMMENDED that Plaintiff's Motion for Summary Judgment or Partial Judgment (Docket Entry 40) be DENIED, Defendants' Motion for Summary Judgment (Docket Entry 37) be GRANTED, and Plaintiff's claims against Defendants Stanly County, Stanly County Sheriff's Office, Stanly County Sheriff Jeff Crisco, Jarett Efird, Daniel Huneycutt, Tom Morgan, Dalton Sells, Joseph Callicutt, and Francisco Porras be dismissed with prejudice.  Further, Plaintiff's claims against Defendant John Doe should be dismissed without prejudice.

/s/  Joe L. Webster
United States Magistrate Judge

February 23, 2024
Durham, North Carolina